UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRANIAL TECHNOLOGIES, INC., | Case No.:  2:23-cv-02320-CBM-E |
| Plaintiff, | **ORDER RE: MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 10,846,925, 10,726,617, AND 10,603,203** |
| v. | |
| OTTOBOCK SE & CO. KGAA, ACTIVE LIFE LLC, and OTTO BOCK HEALTHCARE LP, | |
| Defendants. | |

The matter before the Court is Defendants Ottobock SE & Co. KGaA, Active Life LLC, and Otto Bock Healthcare LP's (collectively, "Defendants'" or "Ottobock's") Motion for Partial Summary Judgment of Non-Infringement of U.S. Patent Nos. 10,846,925, 10,726,617, and 10,603,203.  (Dkt. No. 154.)

## I.    BACKGROUND

This is a patent case filed by Plaintiff Cranial Technologies, Inc. ("Plaintiff") arising from Defendants' alleged use of Plaintiff's patents regarding cranial helmets to treat cranial deformations in infants without authorization.  The First Amended Complaint ("FAC"), which is the operative complaint, asserts the following causes of action against Defendants:  (1) infringement of U.S. Patent No. 7,242,798 ("'798 Patent"); (2) infringement of U.S. Patent No. 7,227,979 ("'979 Patent"); (3) infringement of U.S. Patent No. 10,603,203 ("'203 Patent");

1

(4) infringement of U.S. Patent No. 10,846,925 ("'925 Patent"); and (5) infringement of U.S. Patent No. 10,726,617 ("'617 Patent").  (Dkt. No. 62.)

## II.    STATEMENT OF THE LAW

On a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact.  *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56.  Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A factual dispute is "material" only if it might affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  *Id*. at 249.  In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor."  *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

Defendants move for partial summary judgment of non-infringement as to the '925 Patent, '617 Patent, and '203 Patent.

### A.    "Inner" and "Contact" Limitations

Defendants argue all the claims of the '925, '617, and '203 Patents require an "inner" layer or surface (or "interior" surface) and all but two asserted claims require "contact" between the subject's head and the claimed "inner"/"interior" layer or surface, but contend these limitations are not met and therefore

2

Defendants do not infringe because only the fabric liner touches a subject's head. Defendants argue although Plaintiff's expert Ms. Mattie advanced a doctrine of equivalents theory for "contact" limitations, Mattie failed to carry out a legally proper analysis because she compared the overall patent to the overall accused product in violation of the "all limitations rule."  Defendants thus argue Plaintiff's doctrine of equivalents theory should be barred as a matter of law because Plaintiff's asserted equivalents would otherwise entirely vitiate certain claim elements.

The Supreme Court has stated with respect to the doctrine of equivalents:

> The language in the patent claims may not capture every nuance of the invention or describe with complete precision the range of its novelty. If patents were always interpreted by their literal terms, their value would be greatly diminished. Unimportant and insubstantial substitutes for certain elements could defeat the patent, and its value to inventors could be destroyed by simple acts of copying.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002). "To find infringement under the doctrine of equivalents, any differences between the claimed invention and the accused product must be insubstantial." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1322 (Fed. Cir. 2014).  "Vitiation is not an exception to the doctrine of equivalents, but instead a legal determination that the evidence is such that no reasonable jury could determine two elements to be equivalent." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (internal quotations and citation omitted).  "The proper inquiry for the court is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an 'insubstantial difference' from the claimed element, or 'whether the substitute element matches the function, way, and result of the claimed element.' *Id.* (citing *Warner-Jenkinson*, 520 U.S. 17, 40 (1997)).  "The test of the equivalence of a proposed substitute for a missing element is ordinarily a factual inquiry reserved for the finder of fact." *Id.*  "If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement

under the doctrine of equivalents." *Id*. "[T]he all limitations rule requires that equivalence be assessed on a limitation-by-limitation basis, as opposed to from the perspective of the invention as a whole." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358, 1371 (Fed. Cir. 2005). "Particularized" expert testimony is required. *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, 119 F.4th 1355 (Fed. Cir. 2024).

Contrary to Defendants' contention, Plaintiff's expert Ms. Mattie did not compare the overall patent to the overall accused product in violation of the "all limitations rule," but instead compared the "contact" elements to the inner layer/surface of the MyCRO Band and opined as to why it equivalently "contacts" the head. (*See* Mattie Opening Report ¶ 429-37.) Moreover, Mattie opined Defendants' accused product performs substantially the same function in substantially the same way to obtain the same result of limiting growth in correcting the deformed head. (Mattie Opening Report ¶ 429.) *See NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, 119 F.4th 1355, 1370 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 2794, 222 L. Ed. 2d 1087 (2025). Thus, whether the fabric liner is an unimportant and insubstantial substitute or performs substantially the same function in substantially the same way to obtain the same result is a triable issue of material fact for the jury. *See Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001); *Deere & Co.*, 703 F.3d at 1356. Therefore, Defendants are not entitled to summary judgment because the Court cannot find as a matter of law that no reasonable jury could find equivalence. *Cf. Deere & Co.*, 703 F.3d at 1356.

Defendants also contend the claim limitations which require "contact" between the subject's head and the claimed "inner"/"interior" layer or surface are not met because only the fabric liner touches a subject's head in Defendants' accused product, relying on the Court's construction of "contact." While this Court construed "contact" in the '925, '617 and '203 Patents as "touching" and

rejected Plaintiff's construction of "contact" to mean indirect touching or indirect contact as the claims construction stage (*see* Dkt. No. 134 at 9), whether indirect contact can give rise to infringement is an issue of equivalency which is a factual inquiry for the jury.  *See Deere & Co.*, 703 F.3d at 1357; *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1124 (Fed. Cir. 2001); *see also Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, 315 F. Supp. 3d 1130, 1137 (N.D. Cal. 2018), *aff'd*, 773 F. App'x 623 (Fed. Cir. 2019).

**B.    Calculating "Contour Lines" on an Unmodified Head "Shape"/"File," or Projecting Lines Therefrom to Define Device Edges**

Defendants also argue there is non-infringement of the '617 Patent and '203 Patent because all asserted claims require that an unmodified head shape (or a specific "file" of an unmodified head shape) be the location where claimed "contour lines" are "calculate[d]," and most claims also require that lines be "project[ed] outwards" from those same contour lines (i.e. those calculated on the unmodified head shape/file), and that those "projected lines" (i.e. those originating from calculated contour lines on the unmodified head shape/file) in turn be used to establish or define the edges of a custom device/headwear, but none of these elements are present in Defendants' process to make the MyCRO Band. Defendants contend there is no genuine dispute that when a technician digitally designs the polymer shell of the MyCRO Band for a patient, preliminary device "trimlines" of a digital helmet for that patient are not generated until the "Helmet" step in the software is reached, and even then, such preliminary "trimlines" must be manually adjusted by the technician.  However, at the claim construction stage, this Court construed "contour lines" to mean "trim lines" and rejected Defendants' proposed construction of contour lines as "lines on a three-dimensional surface that define the final edges of the cranial remodeling device."  (Dkt. No. 134 at 7.) The Court reasoned "the file histories of the patents do not limit 'contour lines' to

a 'final shape'; rather, the file histories show Plaintiff referred to 'contour lines' during prosecution of the patents as the 'edges' of a cranial remodeling device or headwear without limiting 'contour lines' to the 'final' edges or shape as proposed by Defendants." (*Id*. at 7.)  Therefore, Defendants are not entitled to summary judgment for non-infringement based on their contention Defendants' contour lines are not the claimed contour lines because Defendants' contour lines are "preliminary" and further "adjusted by the technician."  *See Guangzhou Yucheng Trading Co., Ltd. V. Dbest Products, Inc.*, 644 F. Supp. 3d 637, 670 (C.D. Cal. 2022).

Defendants also argue there is non-infringement because there is no genuine dispute that even the preliminary "trimlines" are placed on an *inflated* version of a *modified* (i.e., user-corrected) head shape, and not any unmodified head shape/file, and it is undisputed that the modified head shape is intentionally inflated before the helmet shell is preliminarily loaded in order to leave space for the liner that covers the inside surface of the 3D-printed helmet shell in every custom MyCRO Band device.  Defendants further argue under the antecedent basis rule,[1] the asserted claims have requirements regarding whether claimed "contour lines" are calculated and from where any "projecting lines" must start to define device edges:  either on an unmodified head "shape" represented by a specific file, or on/in a specific "file" of the unmodified head shape.  Defendants contend Plaintiff cannot meet its burden of showing the presence of "contour lines" on the *unmodified* head "shape"/"file"—which Defendants contend is a requirement dictated by the antecedent basis rule governing use of the definite article "said" in the asserted claims by referring indiscriminately to different "patient-specific"

---

[1] "[W]hen an antecedent relationship exists, '[i]n general, a term is first introduced with an indefinite article and is later referred to with the definite article (or *said*).'" *Sci. Applications Int'l Corp. v. United States*, 169 Fed. Cl. 643, 700 (2024) (quoting *Black's Law Dictionary* (11th ed. 2019); *see also Wi-LAN, Inc. v. Apple Inc.*, 811 F.3d 455,462 (Fed. Cir. 2016) (citing *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008)).

head shapes or files.

However, Plaintiff filed evidence demonstrating Defendants submitted a software validation protocol to the Food & Drug Administration ("FDA") to gain approval for the MyCRO Band to "demonstrate[] that … the overall software work flow performs as intended" and "ensure that the operations of the software is correct to the business process" (Lee Decl. Ex. C, OTTOBOCK0006630 at 6639, 6670, 6898), and that the software protocol included a "Requirement" that "[w]hen the 'Helmet' button is pressed … a virtual helmet is placed ***on the scan***" (*id.*, OTTOBOCK0006630 at 6709 (emphasis added)).  Defendants stated its software met this requirement by specifically testing it to make sure that the "'Helmet' tab button adds a helmet ***on the scan***" (*id.* at 6787), the software would only pass that test "if one selects the 'Helmet' tab button and virtual helmet is added ***to the scan***" (*id.*), and Defendants reported that the Plagio software passed that test (*id.* at 6903).  Defendants' corporate representative testified during deposition that "***everything*** in Otto Bock's FDA submissions about the MyCRO Band are indeed accurate" and Defendants had not found any misrepresentations or inaccuracies in the FDA submissions about the MyCRO Band.  (Beck Depo. 66:12-16, 67:5-24, 101:18-103:7, 106:8-108:6.)  Moreover, Plaintiff submits evidence that the testing report for the Plagio software stated a "Requirement" of the software is that "[w]hen the 'Helmet' button is pressed on the top center of the screen, a virtual helmet is ***placed on the scan***" (Lee Decl. Ex. F, OTTOBOCK0003556 at 3572), and a tester reported when he clicked on the "Helmet" tab button, "a virtual helmet was added ***to the scan***" and provided the following "before" and "after" screenshots showing a helmet with contour lines on the scan (*id.* OTTOBOCK0003556 at 3671, 3719, 3987, 3988).

Furthermore, Plaintiff submits evidence creating a disputed issue of fact as to whether the calculated contour lines are not on the unmodified head shape/file. (*See* Eitel Depo. 22:3-24, 262:3-21.)  Therefore, there is evidence that Defendants'

software re-sizes the helmet including the contour lines by calculating where the contour lines should be placed to match the patient scan.

Moreover, Plaintiff's experts opined the helmet contour lines are calculated based on the patient scan.  (*See* Mattie Opening Report ¶¶ 124-25, 457-62, 572-77, 781-85, 857-62, 1048-53; Mattie Reply Report ¶¶ 229-30; Maly Opening Report ¶¶ 46-48; Maly Reply Report ¶¶ 27-32; *see also* Lee Decl. Ex. G, OTTOBOCK0019070 at 19072.)  Accordingly, there are genuine issues of material fact in dispute regarding whether "trimlines" are placed on an inflated version of a modified (i.e., user-corrected) head shape, and not any unmodified head shape/file.

Plaintiff also submits deposition testimony from Defendants' own expert Mr. Chang demonstrating there are some areas where the contour lines are on the scan and not on the inflated model.  (*See* Chang Depo. 221:2-12, 222:17-25, 223:17-24.)  Plaintiff's expert also opined that in the contact or grip zones where the inflated model and scan overlap, the calculated contour lines are on the surface of the deformed head shape scan.  (*See* Mattie Reply Report ¶¶ 61, 224, 226; Mattie Depo. 560:22-561:13, 587:18-588:7, 590:17-591:3.)

As to the projecting lines elements, Defendants argue they do not practice the claims of the '925 and '617 Patents or claims 7 and 8 of the '203 Patent because they require projecting contour lines from those on the patient scan and Defendants' contour lines are not on the scan.  However, as discussed above, there is a disputed issue of material fact regarding whether Defendants' contour lines are on the patient scan.  (*See also* Lee Ex. K, OTTOBOCK0084935; Mattie Opening Report ¶ 503; Maly Reply Report ¶ 41.)  Therefore, there is a genuine issue of material fact in dispute as to whether Defendants' product infringes the projecting lines elements which precludes summary judgment in favor of Defendants.

/ / /

## IV.   CONCLUSION

Accordingly, the Court **DENIES** Defendants' Motion for Partial Summary Judgment of Non-Infringement of U.S. Patent Nos. 10,846,925, 10,726,617, and 10,603,203.

**IT IS SO ORDERED.**

DATED:  June 11, 2026.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE